

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-18-2006

# Alvarez Amaya v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2996

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Alvarez Amaya v. Atty Gen USA" (2006). *2006 Decisions.* Paper 738.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/738

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-2996

———

ISMAEL ANTONIO ALVAREZ AMAYA,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

———

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A94-092-534)

———

Argued June 29, 2006

Before: BARRY, VAN ANTWERPEN, and JOHN R. GIBSON,[*] Circuit Judges.

(Filed: July 18, 2006)

Regis Fernandez (Argued)
18 Green Street, Third Floor
Newark, NJ 07102

*Counsel for Petitioner*
Julian S. Greenspun
John P. Pearson (Argued)

———

[*]Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by designation.

Criminal Division
United States Department of Justice
1400 New York Avenue NW
Washington, D.C. 20005

*Counsel for the Government*

———

OPINION OF THE COURT

———

VAN ANTWERPEN, <u>Circuit Judge</u>.

Petitioner Ismael Antonio Alvarez-Amaya, a male native and citizen of El Salvador,

seeks review of the decision of the Board of Immigration Appeals ("BIA") affirming without

opinion the decision of the Immigration Judge ("IJ") that Alvarez was removable for having

been convicted of a crime involving moral turpitude, namely endangering the welfare of a

child by sexual conduct which would impair or debauch the morals of a child. The BIA had

jurisdiction pursuant to 8 C.F.R. § 1003.1. This Court has jurisdiction over the petition for

review pursuant to 8 U.S.C. § 1252(a)(2)(D), to consider only "constitutional claims or

questions of law." For the reasons set forth below, we will deny the petition for review.

I.

Because we write solely for the benefit of the parties, we state the facts only as they

pertain to our analysis.

Alvarez-Amaya, who was born in El Salvador, entered the United States in California

on February 15, 1986, without inspection or admission. Ten years later in New Jersey,

Alvarez-Amaya was arrested and charged with violating N.J. Stat. Ann. § 2C:24-4a (West 1995), Endangering Welfare of Children. The Accusation charged that, between January 1, 1995, and August 3, 1995, Alvarez-Amaya "knowingly did engage in sexual conduct which would impair or debauch the morals of a child under the age of 16," specifically a 15-year-old, a crime in the third degree.[1] Alvarez-Amaya pleaded guilty to the charge on October 11, 1996, in New Jersey Superior Court, and was sentenced to twenty days imprisonment and two years probation.

Alvarez-Amaya was arrested by the Department of Homeland Security on September 10, 2003, and placed in removal hearings. He was charged with removal based on violations of 8 U.S.C. § 1182(a)(6)(A)(i), for being an alien present in the United States without admission or parole, and 8 U.S.C. § 1182(a)(2)(A)(i)(I), for being an alien who was convicted of a crime involving moral turpitude. He conceded all factual allegations, but claimed that his conviction was not for a crime involving moral turpitude because the New Jersey statute of conviction did not require criminal intent.

---

[1]At the time of Alvarez-Amaya's arrest, N.J. Stat. Ann. § 2C:24-4a read as follows:

"Endangering Welfare of Children: Any person having a legal duty for the care of a child or who has assumed responsibility for the care of a child who engages in sexual conduct which would impair or debauch the morals of the child, or who causes the child harm that would make the child an abused or neglected child as defined . . . is guilty of a crime of the second degree. Any other person who engages in conduct or who causes harm as described in this subsection to a child under the age of 16 is guilty of a crime in the third degree."

N.J. Stat. Ann. § 2C:24-4a (West 1995) (internal cross references omitted).

The IJ concluded otherwise, and in a written interlocutory decision on June 14, 2004, held that Alvarez-Amaya had been convicted of a crime involving moral turpitude, because his conviction required proof of "knowledge," and fell within the portion of the statute constituting morally turpitudinous conduct. The IJ concomitantly denied Alvarez-Amaya's request for Special Rule cancellation of removal pursuant to 8 C.F.R. § 1240.66, because as of June 2004, he had not been continuously present in the United States for 10 years since the commission of his crime, which had ended in August, 1995. The IJ then, on June 15, 2004, issued an oral decision ordering Alvarez-Amaya removed to El Salvador. On May 31, 2005, the BIA affirmed without opinion pursuant to 8 C.F.R. § 1003.1(e)(4). Alvarez-Amaya then filed this timely petition for review.[2]

II.

Where the BIA affirms without opinion, this Court reviews the IJ's opinion. Abdulai v. Ashcroft, 239 F.3d 542, 549 n.2 (3d Cir. 2001). While we "accord Chevron deference to the BIA's determination that a particular crime involves moral turpitude," the question of whether we owe such deference to an IJ's determination when the BIA affirms without opinion, is still open. Partyka v. Att'y Gen., 417 F.3d 408, 411 (3d Cir. 2005). "[W]e owe no deference to the IJ's interpretation of a state criminal statute." Id. (citing Knapik v. Ashcroft, 384 F.3d 84, 88 (3d Cir. 2004)). We therefore review *de novo* the IJ's conclusion

_____

[2]Alvarez-Amaya later filed with this Court a Motion to Remand to the BIA to allow him to apply for relief under INA § 212(h), on the ground that his wife had just become an United States citizen. This Court denied the Motion on February 3, 2006, without prejudice to Alvarez-Amaya's right to file a waiver motion directly with the BIA.

that Alvarez-Amaya was convicted under a statute with elements constituting a crime involving moral turpitude. We review findings of fact under the substantial evidence standard. 8 U.S.C. § 1252(b)(4)(B); see also Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). Such determinations are upheld unless a "reasonable adjudicator would be compelled to conclude to the contrary," considering the totality of the circumstances. Gao, 299 F.3d at 272 (quoting 8 U.S.C. § 1252(b)(4)(B)).

III.

Our inquiry is two-staged. Under the categorical approach, we first ask whether the statute of conviction covers only morally turpitudinous acts, as determined by the "least culpable conduct necessary to sustain a conviction under the statute." Partyka, 417 F.3d at 411. If a statute is "divisible," however, as through the use of disjunctive or discrete subsections, we must go beyond the statute "to the record of conviction to determine whether the alien was convicted under that part of the statute defining a crime involving moral turpitude." Id. Thus under either of these approaches, we may not look at the specific facts of Alvarez-Amaya's actions.[3] Knapik, 384 F.3d at 88.

Alvarez-Amaya concedes on appeal that the IJ correctly found N.J. Stat. Ann. § 2C:24-4a to be "divisible." See, e.g., Pet. Br. at 12, 19. We therefore must proceed to the

---

[3]Despite his acknowledgment of this basic principle, Pet. Br. at 19-20, 24, Alvarez-Amaya persisted in citing this Court to, e.g., psychiatric reports submitted regarding his actual state of mind, his cultural background, the Presentence Report, and his victim's statement to police. We reject these proffers, and reiterate that the actual facts underlying an alien's conviction have no place in our analysis.

second stage of our analysis, and look at the record of conviction to determine under which part of the statute Alvarez-Amaya was convicted, and whether that portion of the statute defines a crime involving moral turpitude.

N.J. Stat. Ann. § 2C:24-4a comprises four divisible subsections, which we set forth below with classifications added for clarity's sake.

> *Second degree, sexual conduct*: "Any person having a legal duty for the care of a child or who has assumed responsibility for the care of a child who engages in sexual conduct which would impair or debauch the morals of the child."
> *Second degree, abuse or neglect*: "Any person having a legal duty for the care of a child or who has assumed responsibility for the care of a child . . . who causes the child harm that would make the child an abused or neglected child as defined" elsewhere in relevant statutes.
> *Third degree, sexual conduct*: "Any other person who engages in conduct [which would impair or debauch the morals of the child] . . . as described in this subsection to a child under the age of 16."
> *Third degree, abuse or neglect*: "Any other person . . . who causes harm [that would make the child an abused or neglected child] as described in this subsection to a child under the age of 16."

The record of conviction makes clear, and Alvarez-Amaya has conceded, that he was convicted for endangering the welfare of a child through sexual conduct in the third degree. The Judgment of Conviction states that Alvarez-Amaya "has pled guilty to endangering the welfare of a child by consensual sexual contact with a 15 year old female." See also Accusation (charging that Alvarez-Amaya "knowingly did engage in sexual conduct which would impair or debauch the morals of a child under the age of 16 . . . a crime of the third degree").

Our only remaining question, then, is whether this specific section of N.J. Stat. Ann. § 2C:24-4a contains elements defining a crime of moral turpitude. The BIA defines "moral

6

turpitude as conduct that is inherently base, vile, or depraved, contrary to the accepted rules of morality and the duties owed other persons, either individually or to society in general." Knapik, 384 F.3d at 89. The BIA looks for an "evil" or "malicious" intent, Partyka, 417 F.3d at 413, or "serious crimes committed recklessly," id. at 414, because "the definition of recklessness requires an actual awareness of the risk created by the criminal violator's action." Id. (quoting In re Medina, 15 I. & N. Dec. 611, 614 (BIA 1976)). We have upheld the BIA's treatment of reckless endangerment as a crime of moral turpitude. Knapik, 384 F.3d at 89-90.

Here, we are faced with a statute requiring a *mens rea* of "knowledge." See N.J. Stat. Ann. § 2C:2-2c(3) (West 1995) (gap filler provision requiring proof of "knowledge" where, as in N.J. Stat. Ann. § 2C:24-4a the mental state is omitted); State v. Overton, 815 A.2d 517 (N.J. Super. Ct. App. Div. 2003) (applying gap filler of "knowledge" to child endangerment statutes); see also Pet. Br. at 17 (stating there is "no[] dispute that Mr. Alvarez acted knowingly"). "[C]orrupt scienter is the touchstone of moral turpitude." Partyka, 417 F.3d at 413 (quoting Michel v. INS, 206 F.3d 253, 263 (2d Cir. 2000)). "[T]he hallmark of moral turpitude is a reprehensible act committed with an appreciable level of consciousness or deliberation." Id. at 414. In Partyka, we rejected the BIA's attempt to cast negligent assault as a crime involving moral turpitude because "[b]y definition, a negligent assault is unintentional, unwitting, and committed without contemplation of the risk of injury involved." Id.

7

Under the Partyka formulation we have no difficulty concluding that the knowing endangerment of the welfare of a child by sexual conduct which would impair or debauch the morals of a child is both "witting" and committed with contemplation of the risk of injury involved. N.J. Stat. Ann. § 2C:2-2b(2) (West 1995) defines "knowing" as when a person "is aware that his conduct is of that nature, or that such circumstances exist, or he is aware of a high probability of their existence. A person *acts knowingly with respect to a result of his conduct if he is aware that it is practically certain that his conduct will cause such a result.*" (emphasis added).

As the IJ correctly noted, therefore, Alvarez-Amaya was convicted under a statute requiring at the least that he "be aware that he engaged in sexual conduct that was practically certain to debauch or impair the morals of the child victim." This satisfies both the BIA's, and our own, requirement of a reprehensible act committed with sufficient intent, consciousness, or deliberation. Cf. Knapik, 384 F.3d at 86 (rejecting alien's contention that "crimes with a *mens rea* no greater than recklessness cannot involve moral turpitude because such crimes require intent"). We similarly reject Alvarez-Amaya's contention that such conduct is not "inherently base, vile, or depraved," Id. at 89, simply because he states that having sexual relations with a 14- or 15-year-old would be acceptable in El Salvador.

Because Alvarez-Amaya was convicted under the portion of a divisible statute in which moral turpitude inheres, the IJ correctly held him to have committed a crime involving moral turpitude.

IV.

8

Finally, in his brief Alvarez-Amaya urges this Court to remand his petition to the BIA to permit him to re-file for Special Rule cancellation of removal now that ten years have passed since the commission of his state crime. Alvarez-Amaya cites no authority for the idea that the inevitable fact of delay due to appeals to various levels of government entitles him to a revisitation of the IJ's ruling on this matter, nor did he first file a motion for reconsideration with the BIA on this ground before asking this Court for such relief. As the Government correctly notes, we are generally divested of jurisdiction over an order of removal when the alien has been determined to be inadmissible for having committed a crime involving moral turpitude. 8 U.S.C. § 1252(a)(2)(C). While we regain limited jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(D) to consider "constitutional claims or questions of law," Alvarez-Amaya's request for remand does not raise such an issue. We are therefore without jurisdiction to consider this remaining argument.

V.

The IJ correctly concluded that Alvarez-Amaya was convicted of a crime involving moral turpitude. For the foregoing reasons, we will deny the petition for review. We have considered all other arguments made by the parties on appeal, and conclude that no further discussion is necessary.

9