# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
GALLUP, TOZZI, and JOHNSON
Appellate Military Judges

**UNITED STATES**, Appellee

v.

**Private E2 CHARLES M. SAVAGE**
United States Army, Appellant

ARMY 20060167

1st Armored Division
James L. Pohl and Denise R. Lind, Military Judges
Lieutenant Colonel Karen V. Fair, Staff Judge Advocate

For Appellant: Mr. William E. Cassara, Esquire (argued); Captain William J. Stephens, JA; Mr. William E. Cassara, Esquire (on brief).

For Appellee: Captain Anthony O. Pottinger, JA (argued); Major Elizabeth G. Marotta, JA; Major Tami L. Dillahunt, JA (on brief).

19 March 2009

---------------------------------
OPINION OF THE COURT
---------------------------------

JOHNSON, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of one specification of absence without leave and one specification of breaking restriction in violation of Articles 86 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 934 [hereinafter UCMJ]. A panel of officer members convicted appellant, contrary to his pleas, of one specification of attempted premeditated murder in violation of Article 80, UCMJ, and sentenced appellant to a dishonorable discharge, confinement for 23 years, total forfeiture of all pay and allowances, and reduction to Private E1. The convening authority approved the sentence as adjudged. This case is before us for review under Article 66, UCMJ.

Appellant asserts, *inter alia*, that: (1) the military judge erred by ordering the release of privileged statements made during the course of a sanity board and further erred by permitting the government to use those statements during the cross-examination of a defense expert witness; (2) his first detailed military defense counsel was ineffective during pretrial representation for disclosing the full contents

of the sanity board report to the government; and (3) his conviction for attempted premeditated murder is factually and legally insufficient.

These three assignments of error relate directly or indirectly to appellant's claim that, at the time he stabbed the victim, he was asleep due to a sleep disorder called parasomnia. Appellant's parasomniac explanation is relevant to the factual and legal sufficiency of the evidence and also implicates appellant's privilege to prohibit disclosure and use of statements made during a mental health evaluation ordered pursuant to Rule for Courts-Martial (R.C.M.) 706. We must determine when it is appropriate for defense counsel to disclose such statements and how the government can use the statements at trial to rebut a claim that a crime occurred during a parasomniac episode.

We begin our discussion with privileges related to the sanity board and actions by the military judge at trial, followed by appellant's claim of ineffective assistance of counsel. We conclude by addressing the factual and legal sufficiency of the evidence. For the reasons set forth below we affirm the findings and sentence.

**FACTS**

At the time of his offenses, appellant was stationed with the 1st Armored Division at H.D. Smith Barracks, near Baumholder, Germany. On 7 April 2005, appellant received non-judicial punishment for disrespect and assault of a non-commissioned officer in his unit. As punishment for these offenses, appellant was restricted to specified areas on H.D. Smith Barracks. On 8 April 2005, appellant broke the terms of his restriction and absented himself from his unit without authority. On 10 April 2005, while still absent without authority, appellant arrived at the home of the victim in this case, Ms. KM, a local German national appellant met through an acquaintance. Appellant asked Ms. KM if he could stay at her apartment that night and she agreed. When Ms. KM went to work the following morning, appellant was asleep on the couch in her living room. Ms. KM arrived home later that evening and found appellant still in her apartment.

During the second evening of his stay, 11 April 2005, appellant engaged Ms. KM in discussion about whether he should return to his unit. Ms. KM advised appellant "it would be better for [appellant] to drive back." Prior to going to bed that evening, appellant went into Ms. KM's bedroom, stood in the doorway, and engaged her in yet another conversation about his unauthorized absence from his unit. Ms. KM again advised appellant that he should return to his unit. After the brief discussion, Ms. KM got out of bed and gave appellant a key for him to use to exit her building, as well as some Euros for gas, in case appellant decided to leave that evening. Ms. KM then returned to bed. Approximately 30 minutes later, appellant entered her bedroom and stabbed her in the back seven times causing

2

lacerations and a collapsed lung. In addition, while defending herself, Ms. KM received a cut on her finger that severed a tendon.

At trial, Ms. KM testified in detail about the attack. Ms. KM stated she attempted to stop appellant by grabbing his arm but appellant continued to stab her. Ms. KM further testified that appellant told her to "give and it's over" and "continuously said that [she] should be quiet" during the attack. Ms. KM explained that after she nodded her head in response to appellant's statement to "be quiet," appellant loosened his grip and she broke free from appellant's grasp. Ms. KM then ran out of the bedroom, left the apartment, and sought medical assistance from a neighbor in the building. Appellant fled the scene without rendering aid and drove to another friend's home, Ms. BM. When appellant arrived at Ms. BM's home, he told her that a third party attacked Ms. KM.

On 9 June 2005, before referral of the charges to general court-martial, appellant underwent a R.C.M. 706 inquiry (hereinafter sanity board) to determine whether he understood the pending charges and could assist in his own defense. On 30 June 2005, the sanity board published its findings and ultimately concluded appellant was competent to stand trial. The sanity board also concluded there was a reasonable possibility appellant suffered from "parasomnia, or somnambulism that produced an automatism or sleep-related behavior at the time of the assault" and, as a result, appellant "may have been unable to appreciate the nature and quality of his conduct." The clinical psychiatric diagnosis was parasomnia, not otherwise specified (NOS). The full sanity board report contained numerous statements appellant made during the sanity board process.

On 11 August 2005, appellant was arraigned and elected representation by Captain (CPT) JT and CPT KM. During a motions session on 8 September 2005, appellant's trial defense counsel argued, and ultimately lost, a motion to dismiss based upon misleading pretrial advice to the court-martial convening authority and a motion to suppress statements appellant made to German authorities. On 9 September 2005, appellant's military defense counsel provided notice of intent to rely on the defense of lack of mental responsibility. On or about 19 October 2005, without an order from the military judge, the defense counsel e-mailed the full sanity board report, including appellant's statements, to the trial counsel.

On 30 November 2005, defense counsel notified the military judge that appellant no longer desired to be represented by CPT JT and instead wanted an individual military counsel (IMC). At an Article 39(a), UCMJ, session on 1 December 2005, appellant informed the military judge that he wanted to be represented by civilian counsel and an IMC. Appellant's IMC request was subsequently denied. Based upon this denial, at a 14 December 2005 Article 39(a), UCMJ, session, appellant elected to be represented by a civilian counsel and one of his original counsel, CPT KM. Appellant also excused CPT JT from further participation in the case.

On 13 January 2006, appellant's civilian defense counsel submitted a defense witness request. The request included, among other witnesses, the president of appellant's sanity board, Lieutenant Colonel (Dr.) Gary Southwell. The request proffered Dr. Southwell would testify appellant was undergoing a parasomniac experience during the attack on 11 April 2005. One month later, on 13 February 2006, civilian defense counsel submitted an additional witness request for Dr. William Frey, the defense sleep expert appointed by the convening authority. The request stated that in Dr. Frey's opinion, appellant "may well have been experiencing a parasomniac episode" at the time of the assault on Ms. KM. Furthermore, the request stated Dr. Frey's testimony was relevant to the "*mens rea* element of the charged offense." In addition, civilian defense counsel notified the government and the military judge that the defense would not present a defense based upon lack of mental responsibility and would instead request the instruction concerning evidence negating *mens rea* listed in Dep't of Army Pam. 27-9, Legal Services: Military Judges' Benchbook [hereinafter *Benchbook*], para. 5-17 (15 Sep 2002).

At a motion hearing on 21 February 2006, appellant sought to suppress statements made during the sanity board and any derivative evidence from those statements.[1] After hearing argument, the military judge ruled the government could not use appellant's statements from the sanity board during voir dire, opening statements, or the government's case-in-chief. The military judge deferred ruling on the government's use of appellant's statements during cross-examination or rebuttal until the defense presented its case-in-chief.

At trial, the defense theory was, in part, that appellant had a parasomniac condition and could not have formed the specific intent necessary to support a conviction for attempted premeditated murder.[2] In support of its position, the defense presented expert tesimony. In the defense case-in-chief, Dr. Southwell testified that a history of sleepwalking was an important indicator of parasomnia. Dr. Southwell also testified appellant stated during the sanity board he "didn't have any recollection" of prior sleepwalking episodes or of any type of parasomnia.[3] Based upon this testimony, the government requested an Article 39(a), UCMJ, session outside the presence of the members and asked the military judge to permit

---

[1] Appellant also sought disqualification of government counsel, but the motion was affirmatively withdrawn.

[2] In its brief and during oral argument before this court the defense asserted appellant's condition should be a complete defense.

[3] Prior to the expert testimony, defense counsel elicited lay testimony that appellant had prior parasomniac episodes. Ms. TE testified she witnessed appellant doing the dishes while he was not awake and Mrs. DS testified she saw the appellant sleepwalk on two occasions.

limited cross-examination of Dr. Southwell.  The following colloquy ensued among the assistant trial counsel, the military judge, and civilian defense counsel:

> ATC:  We do believe that the defense has opened the door to submit the issues about statements from the accused. The witness testified that [appellant] did not have any recollection of sleep behaviors from before.  That would be a statement that the accused used in his sanity board to [Dr. Southwell] which the defense brought out in testimony.
>
> . . .
>
> MJ:  What do you believe you are entitled to?
>
> ATC:  We'd like to ask about that in cross-examination.
>
> MJ:  That statement alone?
>
> ATC:  Yes, ma'am.
>
> CDC:  No objection.

During cross-examination, the government attacked Dr. Southwell's diagnosis that appellant was experiencing a parasomniac episode during the attack.

> Q:  So if something is labeled like you said parasomia, NOS, it doesn't fit into other categories.  Did you – why did [appellant's case] not fit sleepwalking, doctor?
>
> A:  Well, one of the issues was the history of sleepwalking that was absent.  So rather than – without the history of sleepwalking it was difficult to assign an actual sleepwalking disorder.

Later during the cross-examination of Dr. Southwell, the government asked direct questions about statements made by appellant during the sanity board concerning his sleep history.

> Q:  Sir, you testified that [appellant] didn't have a recollection of previous sleepwalking?
>
> A:  Right.
>
> Q:  And you interviewed him in June 2005?

5

A: Yes.

Q: When you talked to him he never told you he had been told that he was a sleepwalker?

A: Apparently – he didn't tell me that he had been told.

On re-direct, civilian defense counsel attempted to rehabilitate Dr. Southwell.

Q: Now you indicated back in June when you made your diagnosis it was parasomnia NOS in large part because the history was missing.

A: Right.

Q: Now that you have heard the history [from the lay witnesses] would you still maintain that diagnosis or would you refine it?

A: I'd be more comfortable with the diagnosis of sleepwalking.

## LAW AND DISCUSSION

Appellant alleges the military judge abused her discretion by "ordering the defense to turn over the full sanity board report [to the government] when appellant did not raise an insanity defense" and further erred by permitting the government to cross-examine Dr. Southwell, a defense witness, concerning statements made by appellant during the sanity board. We find appellant's allegation that the military judge "ordered" disclosure of the full sanity board report factually incorrect. Furthermore, the military judge properly permitted limited cross-examination of Dr. Southwell concerning statements made by appellant.

Military Rule of Evidence [hereinafter Mil. R. Evid.] 302 grants an accused a privilege for all statements made during the course of a mental examination ordered pursuant to R.C.M. 706. Specifically, Mil. R. Evid. 302(a) states an accused has "a privilege to prevent any statement made by the accused in a mental examination ordered under" the Manual for Courts-Martial "and any derivative evidence obtained through use of such a statement from being received into evidence against the accused on the issue of guilt or innocence or during sentencing proceedings." This rule was proposed and implemented to provide "a form of testimonial immunity intended to protect an accused from use of anything he might say during a mental examination related to a criminal case" ordered under R.C.M. 706. *Manual for Courts-Martial, United States* (2005 ed.) [hereinafter *MCM*], App. 22, A22-8.

6

The privilege, however, is limited to an accused's statements and any derivative evidence obtained through the use of the statements. The ultimate conclusions of the sanity board, commonly referred to as the short form sanity board report, must be provided to the government. *See* R.C.M. 706(c)(3)(A). Under certain circumstances, other portions of the sanity board report can be released to the government. Military Rule of Evidence 302(c) authorizes release of the full sanity board report to the government, absent statements made by the accused, when the defense presents expert testimony concerning an accused's "mental condition." The term "mental condition," however, is not defined. The rule states:

> If the defense offers expert testimony concerning the mental condition of the accused, the military judge, upon motion, shall order the release to the prosecution of the full contents, other than any statements made by the accused, of any report prepared pursuant to R.C.M. 706. If the defense offers statements made by the accused at such examination, the military judge may upon motion order the disclosure of such statements made by the accused and contained in the report as may be necessary in the interests of justice.

Mil. R. Evid. 302(c).

The privilege to prohibit the use of an accused's statements from a sanity board or the derivative evidence at trial is forfeited "when the accused first introduces into evidence such statements or derivative evidence." *See* Mil. R. Evid. 302(b)(1).

*Disclosure of Sanity Board Report*

Appellant first argues the military judge erred by ordering disclosure of the sanity board report. The military judge, however, did not order its release. Appellant's first detailed military defense counsel, CPT JT, disclosed the long form sanity board report, including all of appellant's statements, after notifying the government of the defense's intent to rely on the defense of lack of mental responsibility.[4] Eight days before trial, on 13 February 2006, the defense changed

---

[4] Notably, Appendix 22 to the *MCM* indicates it may be appropriate for defense counsel to disclose the entire sanity board report. *See MCM*, App. 22, A22-9. The pertinent part of the analysis section states, "the defense may consider that it is appropriate to disclose the *entire* sanity report to the trial counsel in a case in which the defense concedes the commission of the offense but is raising as its sole defense the mental state of the accused" (emphasis added). *Id.* In this case, at the time the sanity board report was released to the government, the defense team had notified the government of their intent to rely on the lack of mental responsibility defense.

course and notified the government that it no longer intended to rely on a lack of mental responsibility defense.[5] The question before this court is not whether the military judge abused her discretion in disclosing the contents of the sanity board report, but whether the government received privileged statements in error, and if so, the appropriate remedy.

Appellant argues the government was only entitled to the ultimate conclusions of the sanity board because the case involved a physiological condition, rather than a mental condition. We disagree. Based upon the facts of this case, we concur with the military judge's finding that parasomnia was a "mental condition" as defined by Mil. R. Evid. 302.[6]

The military judge made detailed findings of fact and conclusions of law concerning the term "mental condition."[7] After hearing extensive expert psychiatric testimony, the military judge concluded parasomnia "can have an effect on behavior or the mind." The military judge determined parasomnia is, at the very least, comprised of *both* physiological and mental aspects. The military judge also noted parasomnia is a condition listed in the Diagnostic and Statistical Manual of Mental Disorders, 4th Edition, Text Revision, and is classified as a mental disorder

---

[5] Instead of relying on the defense of lack of mental responsibility, defense counsel requested instruction 5-17, Evidence Negating *Mens Rea*, from the *Benchbook*.

[6] We note that courts have not come to a consensus on the legal status of parasomnia and the parasomnia defense. *See People v. Sedeno,* 518 P.2d 913, 922 (Cal. 1974) (classifying sleepwalking as an unconsciousness defense); *McClain v. Indiana*, 678 N.E.2d 104, 106-07 (Ind. 1997) (classifying sleepwalking as an automatism defense); *Tibbs v. Commonwealth,* 128 S.W. 871, 874 (Ky. 1910) (classifying sleepwalking as an insanity defense); *State v. Overton*, 357 N.J. Super. 387, 395 (App.Div. 2003) (classifying sleepwalking as an involuntary act). Parasomnia, however, is not an affirmative defense recognized by R.C.M. 916. *See generally, United States v. Axelson*, 65 M.J 501 (Army Ct. Crim. App. 2007). We do not go as far as our sister court which implied that parasomnia is "but one of the many disorders encompassed by the defense of insanity." *United States v. Harvey*, 66 M.J. 585, 588 (A.F. Ct. Crim. App. 2008). Furthermore, we need not decide whether parasomnia is *per se* a "mental condition" under Mil. R. Evid. 302. If, for example, the evidence presented at trial shows parasomnia is a purely physical disorder and the defense does not seek to introduce evidence to negate an accused's *mens rea*, it is possible parasomnia would not fit within the definition of "mental condition." Those facts, however, are not before this court.

[7] The military judge made the ruling concerning the term "mental condition" with respect to the use of appellant's statements at trial, not the disclosure of the sanity board report. The analysis of the term "mental condition" is the same for purposes of both use and disclosure.

8

recognized by the American Psychiatric Association. Furthermore, the military judge found that defense counsel sought to introduce evidence of appellant's alleged parasomniac episode to negate *mens rea*.[8] Based upon all the evidence, the military judge found parasomnia was a "mental condition" as defined by Mil. R. Evid. 302.

We agree with the military judge's analysis. A parasomniac event may involve physiological reactions and still be classified a "mental condition" for purposes of Mil. R. Evid. 302. The triggers of Mil. R. Evid. 302 are not limited to those cases where a lack of mental responsibility defense is presented.[9] The *MCM* ascribes a broader meaning to the term "mental condition" than "mental responsibility," as they are used together in many instances, most notably in R.C.M. 916k(1) and (2). The evidence presented at trial established that parasomnia is both a physical and mental condition; and the defense introduced evidence to negate appellant's *mens rea* at the time of the offense. Under these facts, parasomnia is a "mental condition" as defined by Mil. R. Evid. 302, and consequently it was not error for the government to receive the long form sanity board report. Appellant's statements made during the sanity board, however, remained protected under Mil. R. Evid. 302.

In the defense case-in-chief, Dr. Southwell, a defense expert witness, testified that appellant stated he "didn't have any recollection" of prior parasomniac events. Because Dr. Southwell's testimony revealed a specific statement made by appellant relating to the lack of prior parasomniac events, appellant could not prohibit the disclosure of his statements made during the sanity board relating to his sleep history. Consequently, it was not error for the government to receive these statements. Based upon the plain reading of Mil. R. Evid. 302, however, the government was not entitled to appellant's other statements made during the course of the sanity board unrelated to his sleep history. Regardless, even if there was error, the defense did not seek the appropriate remedy.

The facts of this case are similar to those addressed by our superior court in *United States v. Bledsoe,* 26 M.J. 97 (C.M.A. 1988). In *Bledsoe*, the government

---

[8] Note 2 to the instruction specifically requested by defense counsel states the instruction should be given "when premeditation, specific intent, willfulness, or knowledge is an element of an offense, and there is evidence tending to establish a *mental or emotional condition* of any kind, which, although not amounting to lack of mental responsibility, may negate the *mens rea* element" (emphasis added). *Benchbook*, para. 5-17, Note 2.

[9] *See United States v. Norfleet*, 1998 CCA Lexis 302, *21 (A.F. Ct. Crim. App. 2000) (unpub.) (holding "the rule does not say that the defense must offer expert testimony regarding insanity," rather, "it simply says that, when the defense offers expert testimony concerning the mental condition of the accused, the military judge *shall* order release to the prosecution of the full sanity report.").

received privileged statements made by the accused during a sanity board from two of the doctors who served on the sanity board.[10] The court noted that "[t]he privilege against use by the prosecution of any statement made by an accused in a mental examination signifies that such statement should not be revealed to the prosecution by the doctors who performed the sanity evaluation. Apparently, this obligation of confidentiality was violated." *Bledsoe*, 26 M.J. at 102. The court ultimately ruled it needed only to "focus on whether the military judge committed prejudicial error by allowing trial counsel to cross-examine [one of the doctors] about appellant's two statements." *Id.* at 103. The court relied on the fact that the defense did not move to disqualify trial counsel based upon the receipt of privileged information and that the trial counsel represented he had not used the privileged information in preparing the government's case. *Id.* at 102-3. Ultimately the record in *Bledsoe* indicated trial counsel's misacquired knowledge of the accused's statements did not affect the preparation of the government's case. *Id.* at 103.

Similar to *Bledsoe*, appellant's defense counsel did not seek disqualification of trial counsel based upon receipt of the privileged information.[11] Therefore, even if appellant's defense counsel should not have released the entire sanity board,[12] we need only focus on whether the military judge committed prejudicial error by allowing trial counsel to use the privileged statements in cross-examining Dr. Southwell.

*Use of the Sanity Board Report*

Although, as a general rule, the government is not permitted to use appellant's statements made during the course of a sanity board, the defense first presented appellant's statement about his sleep history through an expert witness to advance and buttress its theory of the case. Therefore, appellant held *no* privilege for any of the statements he made during the sanity board about his sleep history.

As noted above, the defense disclosed the full sanity board report to the government well before referral. The military judge's role was therefore not to regulate its release, but rather its use during trial. In this case, the military judge

---

[10] Unlike *Bledsoe*, appellant's defense counsel in this case was an individual authorized to release the contents of the sanity board to the government pursuant to R.C.M. 706(c)(5).

[11] As previously stated, while appellant's defense counsel initially sought to disqualify trial counsel based upon receipt of the privileged statements, the defense affirmatively withdrew the motion to disqualify.

[12] We address appellant's claim of ineffective assistance of counsel separately in the *Ineffective Assistance of Counsel Pretrial* section, *infra*.

did not allow the government to introduce appellant's privileged statements until after the defense forfeited their privilege under Mil. R. Evid. 302.

Assuming, *arguendo*, appellant preserved the issue, we review a "'military judge's decision to admit or exclude evidence . . . under an abuse of discretion standard.'"[13] *United States v. Barnett*, 63 M.J. 388, 394 (C.A.A.F. 2006) (citing *United States v. McDonald*, 59 M.J. 426, 430 (C.A.A.F. 2004)); *see also United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995). In an abuse of discretion review, our court decides a mixed question of fact and law. *United States v. Rodriguez*, 60 M.J. 239, 246 (C.A.A.F. 2004). We apply a clearly erroneous standard when reviewing a military judge's findings of fact, and a de novo standard when reviewing conclusions of law. *Barnett*, 63 M.J. at 394; *Ayala*, 43 M.J. at 298. Therefore, on mixed questions of fact and law, "a military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect." *Ayala*, 43 M.J. at 298.

When a defense expert witness introduces an accused's statement from a sanity board report, the accused has no privilege with respect to that statement. Mil. R. Evid. 302(b). In this case, the government referred to one of appellant's statements made during the sanity board *after* defense counsel purposefully elicited appellant's statement from their own defense expert, Dr. Southwell. Dr. Southwell testified that a history of sleepwalking is an important indicator of parasomnia and then explicitly stated that "Private Savage didn't have any recollection" of prior parasomniac episodes. This reference to appellant's statement opened the door for questions concerning appellant's sleep history. There is no evidence in the record of trial that the government used any other statement made by appellant during the sanity board.

Our superior court's opinion in *United States v. Clark*, 62 M.J. 195 (C.A.A.F. 2005) has limited applicability to the facts of this case. In *Clark*, the military judge abused his discretion when, after finding that the testimony of appellant's expert witness was derivative evidence of the sanity board, the military judge permitted the government to use appellant's statements made during his sanity board in the cross-

---

[13] We recognize that if appellant failed to properly preserve the issue, we would review the admission of evidence under the plain error standard. See *United States v. Moran*, 65 M.J. 178, 181 (C.A.A.F. 2007)(citing Mil. R. Evid. 103(a)(1), 103(d); *United States v. Bungert*, 62 M.J. 346, 347 (C.A.A.F. 2006)). In this case, the government notified the military judge and civilian defense counsel that it intended to pursue cross-examination on this "one statement," with "no objection" by civilian defense counsel. Civilian defense counsel's apparent waiver, however, was made after the military judge ruled parasomnia was a "mental condition" under Mil. R. Evid. 302. Because civilian defense counsel objected and argued that parasomnia was a physical condition, and therefore Mil. R. Evid. 302 was inapplicable, we will apply the higher, abuse of discretion standard.

examination of a defense expert witness.  *Id.* at 199.  The defense expert witness however, only reviewed appellant's sanity board report and "did not read the report until after forming her own opinion."  *Id.*

In this case, the defense expert witness, Dr. Southwell, not only considered the sanity board report in forming his opinion, he authored it.  Furthermore, Dr. Southwell testified about a specific statement provided by appellant directly to him during the sanity board.  Once the defense called this witness to the stand, it clearly understood the risk of exposing appellant's statements and, in fact, elicited appellant's statement from its own expert.  Consequently, the statement was not privileged and the government had the right to use the statement in the cross-examination of Dr. Southwell.  If the defense had chosen not to call Dr. Southwell then *Clark* may have had more relevance here.[14]

With respect to other statements appellant made during the course of the sanity board unrelated to his sleep history, we find the government did not use any of the other statements at trial or in preparation of its case.  Consequently, appellant cannot claim prejudice stemming from improper use of those statements.[15]

*Ineffective Assistance of Counsel Pretrial*

Appellant also alleges his first detailed counsel, CPT JT, was ineffective in releasing the full sanity board report, including all his statements, to the government.  We disagree.

The right to counsel under the Sixth Amendment includes the right to the effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  Allegations of ineffective assistance of counsel are reviewed de novo.  *United States*

---

[14] In a similar vein, if Dr. Frey, the other defense expert, had only reviewed the sanity report after he made a diagnosis, and no other defense expert witness testified about appellant's statements, then arguably *Clark* would prohibit cross-examination on those statements.

[15] Under the facts of this case, had the government used the statements that remained privileged under M.R.E. 302, we would test for prejudice under the constitutional error standard.  Although appellant asserts we should review prejudice under the plain error standard, it is unclear from the record who requested the sanity board.  "[I]f a defendant requests the psychiatric evaluation or presents an insanity defense, 'The defendant would have no *Fifth Amendment* privilege against the introduction of [testimony from his psychiatric evaluation] by the prosecution.'" *Clark*, 62 M.J. at 200 (citing *Buchanan v. Kentucky,* 483 U.S. 402, 422-23 (1987)).  Because the record does not affirmatively show appellant requested the sanity board and we do not decide whether parasomnia is a disorder encompassed by the insanity defense, we would review prejudice under the higher constitutional error standard.

*v. Dobson*, 63 M.J. 1, 10 (C.A.A.F. 2006) (citing *United States v. Wean*, 45 M.J. 461, 463 (C.A.A.F. 1997)).

For an appellant to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate his counsel's performance fell below an objective standard of reasonableness and, but for such deficient performance, the result at trial would have been different. *See Strickland*, 466 U.S. at 687; *United States v. Paxton*, 64 M.J. 484, 488 (C.A.A.F. 2007); *United States v. Jameson*, 65 M.J. 160, 163 (C.A.A.F. 2007). Assistance of counsel is deficient when counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. An appellant has suffered prejudice when counsel's performance deprived him of a fair trial. *Id.*; *Scott*, 24 M.J. at 188.

"On appellate review, there is a 'strong presumption' that counsel was competent." *United States v. Grigoruk*, 56 M.J. 304, 306-07 (C.A.A.F. 2002) (citing *Strickland*, 466 U.S. at 689). A service member "who seeks to relitigate a trial by claiming ineffective assistance of counsel must surmount a very high hurdle." *United States v. Moulton*, 47 M.J. 227, 229 (C.A.A.F. 1997).

First, we find CPT JT was not ineffective when she released the entire contents of the sanity board to the government. Under R.C.M. 706(c)(5), CPT JT had the authority to release the contents of the sanity board to the government and, at the time the sanity board report was released, the defense intended to rely on the defense of lack of mental responsibility. Under these circumstances, Appendix 22 to the *MCM* explicitly states that it may be appropriate for the defense counsel "to disclose the *entire* sanity report" to the government. *MCM*, App. 22, A22-9 (emphasis added).

Defense counsel may have had a valid tactical reason to disclose the report, such as using the sanity board report to negotiate a favorable pretrial agreement with the convening authority. In addition, disclosure of the sanity board report did not automatically permit the government to *use* any statements made by appellant during the sanity board process. Military Rule of Evidence 302 explicitly states that the defense must present expert testimony about appellant's statements made during a sanity board in order for the government to use the statements at trial.

Furthermore, appellant made statements to German authorities about the events of 11 April 2005 that were nearly identical to the statements appellant made during the sanity board concerning the facts and circumstances of the attack. Therefore, the government was already in possession of appellant's version of the facts.

Even if it was error for appellant's defense counsel to release the entire sanity board to the government, appellant failed to show prejudice. To show prejudice

under *Strickland*, appellant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In demonstrating this "reasonable probability," appellant must show a "probability sufficient to undermine confidence in the outcome." *Id.*; *see Paxton*, 64 M.J. at 488. Ultimately, the question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695.

Appellant has failed to demonstrate that the outcome would have been different if his defense counsel had not disclosed the entire sanity board report to the government. As previously stated, the sanity board report, absent appellant's statements, would have been disclosed to the government when the defense presented expert testimony on appellant's mental condition. In addition, appellant's statement that he did not have any recollection of prior parasomniac episodes would have been released to the government after Dr. Southwell testified, and the remaining statements from the sanity board report repeat almost entirely the statements appellant gave to German authorities. There is no reasonable probability that, but for appellant's defense counsel's disclosure of the entire sanity board report to the government, the result of the proceeding would have been different. Hence, appellant was not prejudiced by CPT JT's disclosure of the sanity board report.

### *Factual and Legal Sufficiency of Attempted Premeditated Murder*

Appellant also claims the evidence was factually and legally insufficient to support his conviction for attempted premeditated murder. Article 66(c), UCMJ, requires our court to conduct a de novo review of the factual and legal sufficiency of the evidence. In conducting our analysis, we are required "to evaluate not only the sufficiency of the evidence but also its weight." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

In *United States v. Turner*, our superior court held "[f]or factual sufficiency, the test is whether, after weighing the evidence in the record of trial and *making allowances* for not having personally observed the witnesses, [this court is] convinced of [appellant's] guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325 (emphasis added). Under a legal sufficiency analysis, on the other hand, we must determine whether, "considering the evidence in the light most favorable to the government, a rational fact-finder could have found all the essential elements of the offense beyond a reasonable doubt." *United States v. Craion*, 64 M.J. 531, 534 (Army Ct. Crim. App. 2006) (citing *United States v. Brooks*, 60 M.J. 495, 497 (C.A.A.F. 2005); *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)).

The elements of the offense of attempted premeditated murder are: (1) appellant did certain acts (stabbed Ms. KM); (2) the acts were done with the specific intent to kill; (3) at the time of the acts, appellant had a premeditated design to kill; (4) the act amounted to more than mere preparation; and, (5) the act apparently

tended to effect the commission of premeditated murder. Articles 80 and 118(1), UCMJ.

The record supports our conclusion that appellant's conviction is factually and legally sufficient. Indeed, we find the evidence before us overwhelmingly supports the verdict. The victim is credible, with no motive to distort the facts surrounding the attack. Based on all the evidence, the panel appropriately concluded that appellant tried to kill the victim in this case, Ms. KM. Further, the panel did not believe the alleged parasomniac event affected appellant's ability to specifically intend that result, and neither do we.

Appellant's acts are entirely consistent with attempted premeditated murder and subsequent consciousness of guilt, and inconsistent with a parasomniac event. Appellant was AWOL from his unit and did not want to return. He also lied about his location to at least one individual. Appellant knew that the victim thought it best if he turned himself in, although she never threatened to do so herself. Furthermore, appellant's violent acts were only separated from a previously conscious and lucid conversation by approximately a half-hour's time. Appellant obtained a knife, deliberately entered the bedroom, and repeatedly stabbed the victim causing lacerations, a collapsed lung, and a severed tendon in her finger. During the attack, appellant choked the victim, told her to "give, and it's over," and repeatedly told her to be quiet. After the attack, rather than rendering aid, he pulled on his pants and fled the scene. Once appellant arrived at the house of Ms. BM, he told her that a third party had actually attacked the victim.

Like the panel at trial, we are not swayed by the defense experts in this case, neither of whom was overwhelmingly confident in his diagnosis. In concluding that appellant had the specific intent to kill, the panel also considered the following evidence. First, the appellant had no history of sleepwalking as a child, an important factor usually necessary in diagnosing parasomnia. Second, there was only a short length of time between appellant's conversation with the victim and the attack. This length of time is inconsistent with appellant's ability to enter the phase of sleep most often associated with parasomniac events. Third, appellant's deliberate and complex movements associated with the attack were inconsistent with a parasomniac event. Fourth, violent parasomniac events are rare; coupled with the already rare occurrence of any adult onset parasomniac event, this made appellant's explanation at trial extremely unlikely. Finally, appellant evinced lack of empathy after the attack; he obviously knew Ms. KM was hurt, but fled the scene rather than render aid or even inquire as to her condition. As the experts testified, this is inconsistent with the rare occurrences of documented violent parasomniac events, which typically include acts of remorse and attempts by the assailants to aid their victims.

15

Under the facts of this case and our de novo standard of review, appellant's conviction for attempted premeditated murder is factually and legally sufficient beyond a reasonable doubt.

## CONCLUSION

We have considered the other assignments of error and the errors personally asserted by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge GALLUP and Judge TOZZI concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court