165 N.J. Super. 47 (1979)
397 A.2d 700
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CURTIS DANIELS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 4, 1978.
Decided January 2, 1979.
*48 Before Judges CONFORD, PRESSLER and KING.
Mr. Stanley C. Van Ness, Public Defender, attorney for appellant (Mr. Robert L. Guido, Designated Attorney, on the brief).
Mr. John J. Degnan, Attorney General of New Jersey, attorney for respondent (Mr. Donald S. Coburn, Essex County Prosecutor, of counsel; Ms. Susan L. Schwartz, Assistant Prosecutor, on the brief).
The opinion of the court was delivered by CONFORD, P.J.A.D.
Defendant appeals from a conviction of violation of N.J.S.A. 2A:148-22.1, which provides:
*49 Any person who knowingly and willfully gives false information or causes false information to be given to any law enforcement officer or agency with respect to the commission of any crime or purported crime is guilty of a misdemeanor.
Defendant assigns as error the denial, after trial and conviction, of a motion for acquittal notwithstanding the verdict or, in the alternative, a new trial. Basically, the contention is that the facts in evidence did not establish the guilt of the crime charged.
In the early morning hours of August 24, 1976 two Newark police officers responded to a call of a possible breaking and entry in progress at a church. Upon arriving at the scene they observed a juvenile "idling on the corner" in front of the church. As they approached he attempted to walk away but was detained by the officers. Defendant was apprehended at the rear of the church. He appeared to be perspiring and breathing heavily. The two suspects were detained for questioning. A subsequent investigation disclosed that a nearby tavern had been burglarized and a cigarette machine and other property removed. A witness told the police that she had seen the suspects dragging the cigarette machine across the street.
The suspects were then placed under arrest, advised of their rights and taken to the precinct station for processing. Defendant, upon inquiry, had given his name as Ellis Marvin Jackson, and that was the name used in filling out the arrest and incident reports. The next day a detective interviewed defendant and ascertained that he had given a fictitious name to the police. He was then additionally charged with giving false information to a police officer.
At the trial on charges of entry and larceny, as well as giving false information to the police, defendant was acquitted of the entry and larceny but convicted of giving false information.
The gravamen of defendant's position is that the false information he gave to the police in reference to his name was not material to the investigation of the commission of a crime *50 and that such materiality is an essential element of the offense. In support of his position defendant argues that the falsity of the name he supplied the police did not hamper in any way his arrest or frustrate an investigation since there was no necessity for one. The police had apprehended him on the basis of direct and circumstantial evidence indicative of his guilt of larceny and were in no way hampered in their police function by defendant's furnishing a false name. We think defendant takes too narrow a view of the legislative purpose in proscribing the giving of false information to the police with respect to the commission of a crime. While the underlying purpose of the statute is concededly to prevent "waste of investigative resources" and to prevent distraction and misleading of the police from their activity in detection and investigation of crime, see State v. Sotteriou, 132 N.J. Super. 403, 410 (App. Div. 1975), we believe the full scope of the legislative contemplation as to the prohibited conduct extends to the prophylactic purpose of the statute in preventing conduct which could mislead, deter and distract the police, even though, in the particular instance, the false information provided did not in fact have any adverse effect upon the police investigation. All that is essential is that the information given must have been false and that it might have had a relationship to the crime and to normal police activity directed toward the detection of any offenders implicated and any investigation related thereto.
In the present case the facts and circumstances come well within the stated rationale. As the State correctly maintains, an apprehended suspect's name is invariably material to an investigation of the crime involved. In the instant case defendant's conduct caused a waste of police time and effort. On the evening of the incident an arrest sheet, apparently with fingerprints and a photograph, had been prepared using the false name. Moreover, it cannot be said that there was no need for further investigation after the apprehension of defendant. It was not at that point entirely clear whether *51 he was involved in the actual breaking and entry of the tavern or only in the receipt of stolen goods. The owner of the tavern had informed the police that, in addition to the cigarette machine, two cash registers and approximately $400 in cash were also missing. At that point the police had only recovered a cigarette machine. When defendant was brought to the police station an inventory of the items in his possession revealed only a comb, 50 cents in cash, cigarettes and matches. Further investigative work was necessary to determine exactly what crime defendant had committed, whether there were any confederates, how the other missing property had been disposed of and who was responsible therefor. Relevant to such an investigation would be the questioning of defendant's known associates and the checking of any prior criminal record of his. Thus the relationship of defendant's identity to a full and proper investigation of this crime is apparent.
Defendant is constitutionally privileged to refuse to respond to any questions by the police but not to give affirmatively false information. Distinguish the case where the defendant simply responds to the police questions with an exculpatory denial of implication in the crime. State v. Pandozzi, 136 N.J. Super. 484 (App. Div. 1975), certif. den. 70 N.J. 137 (1976).
Defendant relies upon the statement in State v. Hobbs, 90 N.J. Super. 146, 149 (App. Div. 1966), that the trial jury in that case should have been instructed that the making of false statements to the police would not alone support the charge laid in the indictment. In that case, which involved a murder investigation, the State proved that defendant gave the police an incorrect address, first stated that he had witnessed the crime and then stated that he had not, and that he failed to identify "mugshot" pictures of an individual apparently involved in the investigation of the crime, although he testified he personally knew him. The appellate court conceded that the trial court had read the *52 statute to the jury, defined the terminology thereof and properly set forth the elements of the crime. But the court found reversible error in the failure of the trial court to "relate those elements [of the crime] to the facts of the specific offense for which defendant had been indicted." Id. at 149. If we understand the opinion in Hobbs, we are dubious as to the holding. On the facts set forth, and the concession that the trial court had properly set forth the elements of the crime, we have difficulty in apprehending the basis for reversal in that case. Specifically, we deem the making of false statements as sufficient alone to support the statutory charge of giving false information to the police if that information has a relationship to the crime and a potential of misleading, distracting or hindering a police investigation of it.
Finding no error in the proceedings leading to defendant's conviction, the judgment under appeal is
Affirmed.