902 A.2d 962

STATE OF NEW JERSEY, PLAINTIFF v. ELIZABETH
H. TAYLOR, DEFENDANT.

Superior Court of New Jersey
Law Division—Criminal Part
Camden County

Decided March 13, 2006.

*Tamika McCoy,* Assistant Prosecutor, Office of the Camden County Prosecutor, for plaintiff.

*Thomas J. Gosse,* attorney for defendant.

COOK, J.S.C.

Elizabeth H. Taylor appeals her December 19, 2005 Haddonfield Municipal Court conviction for reporting an incident to the police, knowing it did not occur (false report to police), in violation of *N.J.S.A.* 2C:28–4b(1). Fines and costs totaling $455 were imposed. Payment was stayed pending appeal.

A trial *de novo* was conducted by this court on the evidentiary record in the Municipal Court proceedings before Judge Spence. *R.* 3:23–8(a). It consists of the testimony of Haddonfield Police Officer George Custer, Miriam Seshens, Elizabeth Taylor, Robert Taylor, Dr. Anthony L. Giordano, a clinical psychologist, and a 911 audiotape.

This court is bound by the evidentiary record before the Municipal Court. Its function is to determine the case completely anew on the record made by the Municipal Court, giving due although not necessarily controlling regard to Judge Spence's

opportunity to assess the credibility of the witnesses. Additionally, this court must make its own findings of fact. *Middlesex County Health Dept. v. Importico,* 315 *N.J.Super.* 397, 406, 718 A.2d 727 (Law Div.1998). As Judge Pressler explained in *State v. Ross,* 189 *N.J.Super.* 67, 75, 458 A.2d 1299 (App.Div.1983):

> A trial *de novo* by definition requires the trier to make his own findings of fact. He need, furthermore, give only due, although not necessarily controlling, regard to the opportunity of the municipal court judge to judge the credibility of the witnesses. His is not the appellate function governed by the substantial evidence rule but rather an independent fact-finding function in respect of defendant's guilt or innocence. *See, e.g. State v. States,* 44 *N.J.* 285, 293, 208 A.2d 633 (1965); *State v. Johnson,* 42 *N.J.* 146, 157, 199 A.2d 809 (1964).

## THE EVIDENCE

Haddonfield Police Officer George Custer testified. On October 8, 2005, around 12:20 a.m., he received a priority alert call from the Camden County Communications Center ("CCCC"). The Communications Center had just received a call from Elizabeth Taylor. She reported that there was a fight involving a gun at a residence at 34 Walnut Street in Haddonfield. Eight police cars responded, with officers from Haddonfield, Haddon Township, Haddon Heights and Collingswood. 34 Walnut Street was the residence of Miriam and Howard Seshens. Elizabeth Taylor and Robert Taylor, her husband, lived next door. Officer Custer knocked three times on the door at 34 Walnut. Finally, Mr. and Mrs. Seshens responded. They had been asleep for ninety minutes or so, and were aroused from their sleep by the knocking on their door. Officer Custer determined there had been no fight and no gun incident at the Seshenses' home. He and other officers went next door, to the Taylor residence. No one responded. Officer Custer told the CCCC to call Mrs. Taylor, and ask her to come to the door. She did. Upon inquiry, she told Officer Custer she had called and reported a fight and that somebody had a gun at the Seshenses' house. He told Mrs. Taylor there was no evidence of a fight or a gun at the Seshenses' residence. Mrs. Taylor said she made the call because she heard a fight at the 34 Walnut Street residence, and heard mention of a gun.

Mrs. Seshens testified. She and her husband went to sleep after the 11:00 p.m. news. There was no argument in their home, and there was no one else in their home.

A 911 tape was played. Its contents sound bizarre. The caller identifies herself as Elizabeth Taylor. She says "she thinks there is a woman in the house next door (34 Walnut Street). The woman has a gun and is threatening people there." She says "she heard a commotion—she heard 'them' say 'she' (the woman) has a gun. There's a woman and a man and another man visiting them." She then says "the man has a gun, and he told the woman he does not want to marry her. The man is David Grogan. The woman is Miriam Seshens." Mrs. Taylor says that "the man came to see the woman, and she's been dating him, but he loves Mrs. Taylor." Mrs. Taylor then says "the woman has a gun—she heard the woman and man say 'gun'." Then she says "there are four people next door at 34 Walnut, two females and two males." She identifies them as Miriam Seshens and her husband and David Grogan and another woman. She says she "thinks the woman is very upset because the man said he won't marry her; and the woman owns a gun and has the gun with her." Mrs. Taylor says "the woman is Roseann Harding, and she knows that Ms. Harding has a gun because she has seen it before." After playing the tape, the State rested.

Elizabeth Taylor testified. She called the police because, she said, "I thought I heard, I thought I heard all this going on but it wasn't really happening. It was in my head." She continued, "I have hydrocephalus and I also have—suffer from depression. I'm on a lot of medication..." She testified that, "I believed what I heard but what I heard was not real"; but at the time she made the call she thought it was real. She also referred to two people whose names she mentioned during her 911 call: David Vogan, a friend in Washington, D.C. whom she dated years ago; and Roseann Harding, a former friend of hers. Mrs. Taylor said she was taking Effexor, an antidepressant; Seroquel, a medication for people who "hear[ ]" things; and Klonopin and Ambien, sleep

medications. Seroquel is the medication she takes because she "hears" things. Mrs. Taylor said she thought that the incident she reported to police did occur, explaining that "[i]n my mind it did occur."

Dr. Anthony L. Giordano testified. He is a clinical psychologist, with a Bachelor's degree and Ph.D. from Rutgers University. He has been a licensed practicing clinical psychologist in Pennsylvania and New Jersey for ten years. He has been found qualified as a clinical psychology expert by various courts in fifteen to twenty cases. He is a member of the American, New Jersey and Pennsylvania Psychological Associations. He has taught all fields of psychology. He is well-qualified in the field of psychology, including clinical psychology. His fields of expertise and his treatment experience include depression, anxiety, personality disorders, medically related psychological disorders, PTSD, brain disorders, and schizophrenia.

Dr. Giordano has been treating Mrs. Taylor since January 2005. Her diagnosis is major depressive disorder with psychotic features and with cognitive disorder. Based on her history of hydrocephalus—fluid in the ventricles of the brain—she has a cognitive disorder. The psychotic features include hallucinations—auditory hallucinations, and delusional thinking. Dr. Giordano explained:

> [Mrs. Taylor's] hallucinations are auditory in nature. She believes she hears—she hears things coming from her neighbor's house. She believes there's something coming through the telephone wiring that the previous owners had in the house. And she believes she can hear the voices from her neighbor's house through these outlets.

Dr. Giordano opined that based on the contents of the 911 tape, his knowledge of Mrs. Taylor's illnesses, and his discussions with her, she was hallucinating on the night in question, and that: "She believed she heard these people speaking, people that weren't even there [Roseann Harding, David Vogan]." Dr. Giordano further related that it wasn't the first time Mrs. Taylor hallucinated; she has heard things from her neighbor's house before. Dr. Giordano explained that when a person hallucinates, she has a fixed belief: she absolutely believes that whatever she sees or

hears is actually happening in reality. Dr. Giordano concluded that on October 8, 2005, Mrs. Taylor was hallucinating when she made the report to police. Dr. Giordano testified on cross-examination that Mrs. Taylor has had "auditorial hallucinations" at least since he began seeing her in January 2005.

Mr. Taylor testified. He is a licensed professional counselor in the behavioral health field, including mental health. He related that Mrs. Taylor has hydrocephalus, including cognitive deficits. She has depression and sleep disorder. She has had hallucinations and delusions. She "hears people talking" when no one is actually talking. She's "heard voices" many times, and is very convinced that this happens, when in fact there are no voices. She is very often "out of touch with reality."

The State presented no testimony to meet, counter, negate or address the evidence of Mrs. Taylor's depression, cognitive disorder and psychotic conditions, including her ongoing history of auditory hallucinations and delusional thinking—her being out of touch with reality.

## FINDINGS

I find that the testimony of Officer Custer, Mrs. Seshens, Dr. Giordano and Mr. Taylor is fully credible and worthy of belief. Mrs. Taylor's testimony should be viewed in the light of her mental history and condition.

It is clear from the arguments of the municipal prosecutor that he misunderstood the issue presented by the testimony of Dr. Giordano, Mr. Taylor and Mrs. Taylor, *i.e.*, whether her "mental disease or defect" or "diminished capacity" negated the *mens rea* or mental state required by *N.J.S.A.* 2C:28–4b(1) to be proven by the State in this case; specifically, that Mrs. Taylor reported to police an incident "*knowing*" it did not occur (emphasis added).[1]

---

[1] *N.J.S.A.* 2C:28–4b(1), the "fictitious reports" statute, prohibits a person from reporting to law enforcement authorities "an offense or other incident within their concern *knowing* that it did not occur" (emphasis added).

See *N.J.S.A.* 2C:4–2, *Evidence of Mental Disease or Defect Admissible When Relevant to Elements of the Offense.*[2]  Instead, the prosecutor insisted that the only mentally-related defense available under New Jersey law is an "insanity defense," which must be proven by the defendant.  He was unfamiliar with *N.J.S.A.* 2C:4–2, the "mental disease or defect" statute.  And while the municipal court made a passing reference to that statute, no findings of fact were made on that issue.  Nor was there any finding by the court that Mrs. Taylor reported the incident to police, *"knowing"* that it did not occur, an essential element that must be proven by the State beyond a reasonable doubt.

The issue below and on this appeal is not whether Mrs. Taylor was insane.  Rather, the evidence raises the applicability of *N.J.S.A.* 2C:4–2, the "mental disease or defect" statute, specifically, a defendant's "diminished capacity" to form the *mens rea* element required for an offense.  Here, the *mens rea* element requires the State to prove beyond a reasonable doubt that Mrs. Taylor *"kn[ew]* that [the incident she reported] did not occur." *N.J.S.A.* 2C:28–4b(1).  The uncontroverted evidence of Mrs. Taylor's "diminished capacity" to form the "knowing" element of *N.J.S.A.* 2C:28–4b(1) presented by the defense, in turn places the burden upon the State to prove beyond a reasonable doubt that she acted with the requisite mental state, *viz.,* that she reported the incident to the police, *"knowing* that it did not occur." *N.J.S.A.* 2C:28–4b(1) (emphasis added).

Unlike the insanity defense, a "diminished capacity" or "mental disease or defect" condition is not an affirmative defense. The defendant does not bear the burden of proof, either by a preponderance of the evidence, beyond a reasonable doubt, or

---

[2] *N.J.S.A.* 2C:4–2 provides that "[e]vidence that the defendant suffered from a mental disease or defect is admissible whenever it is relevant to prove that the defendant did not have a state of mind which is an element of the offense.  In the absence of such evidence, it may be presumed that the defendant had no mental disease or defect which would negate a state of mind which is an element of the offense."

otherwise. Instead, once the evidence of Mrs. Taylor's mental disease or defect was presented, the State was required to prove beyond a reasonable doubt that despite the evidence of her mental disease or defect, nonetheless she *"knew"* that the incident she reported to police did not occur or, in the words of the statute, that she did so *"knowing* that it did not occur." *N.J.S.A.* 2C:28–4b(1) (emphasis added). *See, e.g., State v. Overton,* 357 *N.J.Super.* 387, 395, 815 *A.*2d 517, (App.Div.2003) (evidence of a sleep disorder—sleepwalking—negates defendant's capacity to act "knowingly", and negates a voluntary act). Criminal liability requires, at a minimum, proof of a voluntary act and that the defendant acted with a culpable ("knowing") state of mind. *Id.* at 395, 815 *A.*2d 517. *See also State v. Delibero,* 149 *N.J.* 90, 105, 692 *A.*2d 981 (1997) (evidence of defendant's mental state may be considered in determining whether or not the State has proven beyond a reasonable doubt that the defendant acted "knowingly"); *Model Jury Charge, Evidence of Mental Disease Or Defect* (where evidence of a mental disease or defect is presented, the State must prove beyond a reasonable doubt that the defendant acted with the requisite mental state, such as "knowing" or "knowingly"). Mental disease or defect is relevant to any culpable mental state, including "knowing" states. *State v. Lane,* 279 *N.J.Super.* 209, 216, 652 *A.*2d 724 (App.Div.), *certif.* denied, 141 *N.J.* 94, 660 *A.*2d 1193 (1995). It is only where there is an "absence of [mental disease or defect] evidence [that] it may be presumed that the defendant had no mental disease or defect which would negate a state of mind which is an element of the offense." *N.J.S.A.* 2C:4–2.

A thorough analysis of the "mental disease or defect—diminished capacity" statute appears in *State v. Galloway,* 133 *N.J.* 631, 637–49, 628 *A.*2d 735 (1993). The Supreme Court held that the term "mental disease or defect" in the "diminished capacity" statute includes all mental deficiencies that can affect a defendant's cognitive faculties, including cognitive disorders that impair a defendant's cognitive capacity to formulate the mental state necessary for commission of an offense.

According to the uncontroverted evidence in this case—including the testimony of Dr. Giordano, a licensed clinical psychologist and Mrs. Taylor's treating clinical psychologist; the testimony of Mr. Taylor, a licensed professional counselor in mental health and other fields of behavioral health; the 911 tapes; and Mrs. Taylor's own testimony—she suffers from a diminished mental capacity, including cognitive disorder, auditory hallucinations, and delusional thinking. She believes she hears things, including things coming from her neighbor's house, through the telephone wires in her house. She believes she can hear voices from her neighbor's house through those wires. Dr. Giordano explains that she hallucinates, and when she does, she absolutely believes that whatever she sees or hears is really happening. He specifically concludes that she was hallucinating when she called the police on the night of this incident. Her husband, Robert Taylor, a licensed professional counselor, traces her history of hallucinations and delusions, explaining that she hears people talking when no one is talking; she hears voices; and she is convinced that this happens, when in fact there are no voices. As Mr. Taylor observes, she is very often "out of touch with reality."

Abundant evidence of the existence of Mrs. Taylor's mental disease or defect was presented by the defense. The evidence clearly raised her "diminished capacity" to *"know"* that the incident she reported to police did not occur, that being the *mens rea* or mental state element required by *N.J.S.A.* 2C:28–4b(1). The evidence that because of her auditory hallucination condition, Mrs. Taylor believed the incident she reported occurred, and did not "know" otherwise, is unrebutted by the State. Although the State has the burden to meet that evidence with evidence proving beyond a reasonable doubt that Mrs. Taylor "knew" the incident she reported to police did not occur, it has produced no such evidence, and has not meet its burden of proof.

## CONCLUSION

While the State proved that Mrs. Taylor reported an incident to police that did not occur, it failed to prove beyond a reasonable

doubt that she did so with the mental state required by *N.J.S.A.* 2C:28–4b(1), *i.e.*, that she did so "... *knowing* that [the incident reported] did not occur" (emphasis added). Accordingly, Mrs. Taylor is not guilty of violating *N.J.S.A.* 2C:28–4b(1).