NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2523-13T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

L.S.,

    Defendant-Appellant.

_____

| |
|---|
| **APPROVED FOR PUBLICATION** |
| **February 23, 2016** |
| **APPELLATE DIVISION** |

       Argued January 4, 2016 — Decided February 23, 2016

       Before Judges Messano, Simonelli, and Carroll.[1]

       On appeal from the Superior Court of New Jersey, Law Division, Essex County, Municipal Appeal No. 2013-046.

       Patrick J. Spina argued the cause for appellant (Law Offices of Patrick J. Spina, P.C., attorneys; Mr. Spina, on the brief).

       Andrew R. Burroughs, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Carolyn A. Murray, Acting Essex County Prosecutor, attorney; Mr. Burroughs, on the brief).

    The opinion of the court was delivered by

MESSANO, P.J.A.D.

_____

[1] Judge Carroll did not participate in oral argument.  He joins the opinion with counsel's consent.  R. 2:13-2(b).

Following a trial de novo in the Law Division, defendant L.S.[2] was found guilty of making a false report to law enforcement authorities, N.J.S.A. 2C:28-4(b)(1). The Law Division judge imposed the same fines, penalties and costs of court imposed by the municipal court judge. Before us, defendant argues in a single point:

> THERE IS INSUFFICIENT CREDIBLE EVIDENCE PRESENT IN THE RECORD TO UPHOLD THE FINDINGS OF THE LAW DIVISION WHICH FOUND [DEFENDANT] GUILTY OF KNOWINGLY FILING A FALSE POLICE REPORT IN VIOLATION OF N.J.S.A. 2C:28-[4(b)(1)].

I.

The record reveals that in November 2010, defendant was a student at Seton Hall University. Late in the evening of November 16, she reported to South Orange Police that she was sexually assaulted on campus by an unknown assailant. Defendant told police that a "black" man had vaginally penetrated her with his penis near the university parking garage. Defendant was transported to the hospital where she was examined, and a Sexual Assault Forensic Medical Report was prepared.

In a subsequent conversation with the university's Dean of Students on November 18, defendant admitted that she knew her

---

[2] Given the nature of the case and our disposition of defendant's appeal, we choose to use initials to maintain her privacy.

assailant, and that he picked her up at school and drove off campus where the events occurred. Police responded to the university as a result of a phone call from the Dean's office, and took defendant to headquarters to secure another statement.

Mark Garrett of the South Orange Police Department, the detective who initially spoke with defendant on campus on the night of November 16, 2010, spoke to her again at police headquarters on November 18. After being read her Miranda[3] rights, defendant told Garrett that she met her assailant on the Internet. She provided Garrett with his screen name and phone number. Defendant said that she physically met the man for the first time on November 16, when he came to the campus, she entered his car, and they drove to a street across from the university where they parked. Defendant stated that, while in the car, the man indicated that he wanted to have sex, but defendant refused. At one point, she exited the car, but the man persuaded her to re-enter. He then straddled her chest as she sat in the passenger seat, removed his penis, pulled down her shirt, and tried to force her to give him oral sex by placing his penis near her mouth. Defendant refused. Defendant told Garrett that the man did not ejaculate on her.

---

[3] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

A-2523-13T2

Garrett traced the phone number defendant provided to W.P., and secured a statement from him. W.P., who testified at the municipal court trial, acknowledged meeting defendant through a social networking site and thereafter texting her and speaking to her on the telephone. On the night in question, he met defendant for the first time, picked her up on campus in his car and parked across the street from the university. W.P. claimed that defendant immediately unzipped his pants, removed his penis and masturbated him. W.P. ejaculated on defendant's exposed breasts, and she licked his penis. W.P. testified the incident was consensual.

On November 24, 2010, after being authorized to do so by an Essex County Assistant Prosecutor, Garrett caused a complaint/summons to be issued against defendant charging her with violating N.J.S.A. 2C:28-4(b)(1). The complaint alleged that defendant

> did . . . report to law enforcement authorities an offense, knowing that such offense did not occur, specifically by: reporting to South Orange Police Department that she was the victim of a sexual assault at Seton Hall University on November 16, 2010.

When asked on cross-examination what offense "didn't occur," Garrett answered, "[s]exual assault." Garrett acknowledged that he reached this determination by interviewing defendant and W.P.

and assessing each person's credibility. He acknowledged conducting no further investigation, nor did he review the hospital report that revealed there was no evidence of semen on defendant's body.

After defendant's motion for acquittal was denied, Dr. Stuart Kirschner, a psychiatrist, testified as her only witness. We need not review Kirschner's testimony in detail, since it is largely irrelevant to our decision. It suffices to say that Kirschner opined defendant suffered from depression, was delusional and lacked the capacity to have knowingly filed a false report. See State v. Taylor, 387 N.J. Super. 55, 61 (Law Div. 2006) (recognizing evidence of "diminished capacity" as negating the knowing mental state required by N.J.S.A. 2C:28-4(b)(1)).

The municipal court judge found defendant guilty. We recite at length the judge's specific findings of fact and conclusions of law:

> In this particular case there seem[s] to be a great focus on whether or not a sexual assault took place. This [c]ourt[] was not[] and will not be called upon to determine if a sexual assault . . . took place. [The] [s]imple question before this [c]ourt is whether or not there's a violation of [N.J.S.A.] 2C:28-4.
>
> I find beyond a reasonable doubt that the defendant falsely reported the location of the incident. She initially withheld

> information about the alleged assailant[,] who she declined to identify as a person known to her. . . . .

[(Emphasis added).]

The judge found these "false details . . . were similar to the nature of the details . . . reported" in State v. Daniels, 165 N.J. Super. 47 (App. Div. 1979). The judge further stated:

> [C]learly the location of the incident, as well as the identity of the person, which was known to [defendant] but she decided to withhold his identity as the perpetrator certainly did . . . hamper the investigation. But again[,] I'm not called upon . . . to determine whether or not there was . . . or was not a sexual assault. Simply whether or not [defendant] provided false information in connection with this investigation.

> [S]o I do find beyond a reasonable doubt that the defendant was fully cognizant of the events, identity and location of the incident. That she intentionally withheld details, which amounted to a violation of [N.J.S.A.] 2C:28-4[(b)](1).

[(Emphasis added).]

The judge imposed fines, mandatory financial penalties and court costs at sentencing.

Defendant appealed to the Law Division. Among other things, she contended that the municipal court judge only found that she knowingly falsely reported two details, i.e., the location of the crime and the identity of her assailant. Defendant specifically argued the judge failed to find her

report of sexual assault was false. Given all the evidence at trial, including differences between W.P's statement to police and his testimony at trial, defendant contended that the State failed to prove beyond a reasonable doubt that a sexual assault had not occurred.

In a written opinion, the Law Division judge echoed the municipal court judge's opinion that it was unnecessary to decide whether a sexual assault actually occurred. The judge wrote, "[a]s there was no prosecution for the sexual assault there is no legal determination as to whether defendant had been sexually assaulted." The judge cited the specificity of defendant's "description of the on campus location of the incident," as well as the "initial detailed description of [W.P.]." The judge continued:

> In the face of unrebutted expert testimony correlative to the claim of sexual assault, the [municipal] court was still within its discretion to find that when the defendant reported <u>that she was the victim of a crime on the campus of Seton Hall committed by a stranger, that, she was, as she later admitted, lying</u>. Her defense, that she may have been experiencing hallucinations would have been considered by the municipal court judge if the judge had the jurisdiction to rule whether the defendant had been sexually assaulted, and, [he] did not.
>
> The record below supports the finding by the municipal court judge that the State did prove beyond a reasonable doubt that on November 16, 2010, [d]efendant[] falsely

reported <u>that she was the victim of a crime committed by a stranger on the campus of Seton Hall University</u>.

[(Emphasis added).]

Before us, defendant reiterates that the State failed to prove beyond a reasonable doubt that she reported to police an offense that did not occur, and, therefore, the State failed to prove one of the essential elements of <u>N.J.S.A.</u> 2C:28-4(b)(1). The State argues that defendant admittedly lied to police about two salient facts — the location of the crime and the identity of her assailant. It contends that these facts "had a relationship to the crime and to normal police activity directed toward the detection of any offenders implicated and any investigation related thereto." <u>Daniels</u>, <u>supra</u>, 165 <u>N.J. Super.</u> at 50. As a result, the State contends defendant violated <u>N.J.S.A.</u> 2C:28-4(b)(1).

We have considered these arguments in light of the record and applicable legal standards. We reverse.

## II.

"[A]ppellate review of a municipal appeal to the Law Division is limited to 'the action of the Law Division and not that of the municipal court.'" <u>State v. Palma</u>, 219 <u>N.J.</u> 584, 591-92 (2014) (quoting <u>State v. Oliveri</u>, 336 <u>N.J. Super.</u> 244,

251 (App. Div. 2001)).[4]  We defer to the judge's fact finding, and our "review is limited to 'whether the findings made could reasonably have been reached on sufficient credible evidence present in the record.'"  State v. Kuropchak, 221 N.J. 368, 382-83 (2015) (quoting State v. Johnson, 42 N.J. 146, 162 (1964).  We owe no deference, however, to the "trial court's interpretation of the law . . . and the consequences that flow from established facts[,]" which we review de novo.  State v. Hubbard, 222 N.J. 249, 263 (2015).  Questions of statutory interpretation present purely legal issues.  State v. Grate, 220 N.J. 317, 329 (2015).

At the time of trial, the offenses defined by N.J.S.A. 2C:28-4, "False Reports to Law Enforcement Authorities," included:

> a. Falsely incriminating another. A person who knowingly gives or causes to be given false information to any law enforcement officer with purpose to implicate another commits a crime of the fourth degree.

---

[4] It was inappropriate for the Law Division judge to defer to the "discretion" of the municipal court judge or otherwise "affirm" the findings made by that judge.  On de novo appeal, the Law Division judge must make her own independent findings of fact based on the record before the municipal court.  State v. Kashi, 360 N.J. Super. 538, 545 (App. Div. 2003), aff'd, 180 N.J. 45 (2004).  We accept for purposes of our review that the Law Division judge implicitly made the same factual findings as did the municipal court judge and specifically failed to find that a sexual assault or some other offense did not occur.

    b. Fictitious reports. A person commits a disorderly persons offense if he:

    (1)  <u>Reports</u> or causes to be reported <u>to law enforcement authorities an offense or other incident within their concern knowing that it did not occur</u>; or

    (2)  Pretends to furnish or causes to be furnished such authorities with information relating to an offense or incident when he knows he has no information relating to such offense or incident.[5]

    [<u>Ibid.</u> (Emphasis added).]

The language tracks almost verbatim that of <u>Model Penal Code</u> § 241.5; <u>see also</u> Cannel, <u>New Jersey Criminal Code Annotated</u>, comment 1 on <u>N.J.S.A.</u> 2C:28-4 (2015-16).  Several of our sister states have adopted similar provisions.   <u>Model Penal Code</u>, <u>supra</u>, cmt. 1.  Only a few states have adopted provisions nearly identical to <u>N.J.S.A.</u> 2C:28-4(b)(1).   <u>See, e.g.</u>, 18 <u>Pa. Cons. Stat</u>. § 4906(b)(1); <u>Mont. Code Ann</u>. § 45-7-205(1)(b); <u>N.H. Rev.</u>

---

[5] The Legislature has since made violation of subsection (a) a third-degree crime, "except the offense is a crime of the second degree if the false information which the actor gave . . . would implicate the person in a crime of the first or second degree." <u>See</u> <u>L.</u> 2015, c. 175, § 1 (eff. Jan. 11, 2016).  Offenses defined in subsection (b) are now fourth-degree crimes.   The elements of each crime in subsection (b), however, remained unchanged. <u>Ibid.</u>   In explaining the rationale behind increasing the penalties, the Legislature stated that "false police reports abuse valuable public resources and endanger the entire community by diverting the efforts of law enforcement away from <u>genuine criminal activity</u>."   Assembly Law and Public Safety Committee, Statement to Senate Bill No. 835 (1st reprint) (Mar. 16, 2015) (emphasis added).

Stat. Ann. § 641:4(I); Utah Code Ann. § 76-8-506(2); Vt. Stat. Ann. tit. 13, § 1754(b)(1).

N.J.S.A. 2A:148-22.1 was "the most similar provision of prior law." Cannel, supra, comment 2 on N.J.S.A. 2C:28-4; see also Commentary, New Jersey Criminal Code, N.J.S.A. 2C:28-4 (1971) (citing N.J.S.A. 2A:148-22.1 as the current "statute dealing with such false reports"). N.J.S.A. 2A:148-22.1 provided that "[a]ny person who knowingly and willfully gives false information or causes false information to be given to any law enforcement officer or agency with respect to the commission of any crime or purported crime is guilty of a misdemeanor."

In Daniels, supra, the case relied upon by both the municipal court judge and the State before us, the defendant gave police a fictitious name upon arrest and was convicted of violating N.J.S.A. 2A:148-22.1 at trial. 165 N.J. Super. at 49. On appeal, he argued that the false name was immaterial to the investigation of the underlying crime, a burglary, and did not hamper police in any way. Id. at 49-50. We rejected this "narrow . . . view of the legislative purpose" of the statute, concluding that "[a]ll that is essential is that the information given must have been false and that it might have had a relationship to the crime and to normal police activity directed toward the detection of any offenders implicated and any

investigation related thereto." Id. at 50. Later in the opinion, however, we defined the crime somewhat differently: "[W]e deem the making of false statements as sufficient alone to support the statutory charge of giving false information to the police if that information has a relationship to the crime and a potential of misleading, distracting or hindering a police investigation of it." Id. at 52 (emphasis added). See also State v. Sotteriou, 132 N.J. Super. 403, 410 (App. Div. 1975) (affirming the defendant's conviction under N.J.S.A. 2A:148-22.1 for "fabricat[ing] a story about criminal events which did not happen"), certif. denied, 70 N.J. 144 (1976).

Few reported cases have construed the provisions of N.J.S.A. 2C:28-4, but we conclude that the statute "is considerably more narrow than . . . N.J.S.[A.] 2A:148-22.1." Cannel, supra, comment 2 on N.J.S.A. 2C:28-4. The most serious offense requires that the "false information," whatever its nature, be provided to law enforcement with a specific purpose, i.e., "to implicate another." N.J.S.A. 2C:28-4(a). Examples of conduct that violates subsection (a) may be found in the Court's opinion in In re Kornreich, 149 N.J. 346, 364 (1997) (attorney violated ethics rules and N.J.S.A. 2C:28-4(a) by falsely implicating another person in motor vehicle violations), and our opinion in State v. Hinton, 333 N.J. Super. 35 (App. Div.),

12

<u>certif. denied</u>, 165 <u>N.J.</u> 678 (2000). In <u>Hinton</u>, we concluded that the defendant had violated <u>N.J.S.A.</u> 2C:28-4(a) by using the name of a co-worker to falsely identify himself to law enforcement officers "with the intent to falsely implicate [the co-worker]." <u>Id.</u> at 39-40. No reported case, however, has construed the provisions of <u>N.J.S.A.</u> 2C:28-4(b).[6]

In construing a statute, "[o]ur task . . . 'is to discern and give effect' to the Legislature's intent." <u>State v. Munafo</u>, 222 <u>N.J.</u> 480, 488 (2015) (quoting <u>State v. O'Driscoll</u>, 215 <u>N.J.</u> 461, 474 (2013)). We first examine the "plain language of the statute." <u>Ibid.</u> (citing <u>State v. Frye</u>, 217 <u>N.J.</u> 566, 575 (2014); <u>DiProspero v. Penn</u>, 183 <u>N.J.</u> 477, 492 (2005)). "When that language 'clearly reveals the meaning of the statute, the court's sole function is to enforce the statute in accordance with those terms.'" <u>State v. Olivero</u>, 221 <u>N.J.</u> 632, 639 (2015) (quoting <u>McCann v. Clerk of Jersey City</u>, 167 <u>N.J.</u> 311, 320 (2001)). When the language is ambiguous, however, a court may

---

[6] The Law Division's opinion in <u>Taylor</u>, <u>supra</u>, 387 <u>N.J. Super.</u> at 60-63, focused solely on the availability of expert "diminished capacity" evidence to raise a reasonable doubt as to whether the defendant possessed the requisite mental state, but otherwise the opinion did not construe the statute or define the elements of the offense. Our research failed to reveal any reported decision from other States that have adopted provisions similar to 2C:28-4b(1).

examine extrinsic evidence to determine the Legislature's intent. Ibid.

Additionally, penal statutes must be "strictly construed." Ibid. (citing State v. D.A., 191 N.J. 158, 164 (2007)). As a result, "the rule of lenity is applied . . . if a statute is ambiguous, and that ambiguity is not resolved by a review of 'all sources of legislative intent.'" Id. at 640 (quoting D.A., supra, 191 N.J. at 165). Under the rule of lenity, "any reasonable doubt" as to the "ordinary meaning" of the statutory language is resolved in favor of the defendant. Id. at 639 (quoting D.A., supra, 191 N.J. at 164).

Unlike subsection (a), subsection (b) of N.J.S.A. 2C:28-4 only proscribes conveying certain types of false information to law enforcement. In subsection (b)(1), which is at issue in this case, the actor may not "report" to law enforcement authorities "an offense or other incident within their concern" with the knowledge "that it did not occur." N.J.S.A. 2C:28-4b(1) (emphasis added). The plain language requires that the State prove beyond a reasonable doubt that a defendant knowingly reported to law enforcement an "offense" that did not occur, or an "incident within the[] concern" of law enforcement that did not occur. Professor Cannel describes the offense as "reporting a crime which did not occur." Cannel, supra, comment 2 on

14 <span>A-2523-13T2</span>

N.J.S.A. 2C:28-4b(1). We differ only to the extent that the plain language of the statute includes reports of "offense[s]," not just crimes, as well as "other incident[s] within the[] concern" of law enforcement, that did not occur. See N.J.S.A. 2C:28-4(b)(1). We have no doubt, for example, that if an actor reports to law enforcement a traffic accident that never occurred, he will have violated the statute.

In this case, neither the municipal court judge nor the Law Division judge found as a fact that defendant reported to police "an offense or other incident within their concern knowing that did not occur." Each judge specifically eschewed reaching a decision as to whether a sexual assault or some other offense had actually occurred, instead, limiting their factual findings to two details of the incident — where it occurred and whether defendant knew her assailant. Although defendant admitted that her original version of events was false in these and perhaps other details, the evidence was insufficient to convict her of violating N.J.S.A. 2C:28-4(b)(1) absent a finding, beyond a reasonable doubt, that no sexual assault or other offense had occurred. Indeed, that is what defendant was charged with in the complaint.

We therefore reverse defendant's conviction because the State failed to prove one of the essential elements of N.J.S.A.

2C:28-4(b)(1) beyond a reasonable doubt.  The matter is remanded to the Law Division for entry of an order entering a judgment of acquittal and vacating the fines, penalties and costs imposed upon defendant.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2523-13T2