NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4703-15T3

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

RICHARD J. SABATINO,

 Defendant-Appellant.
________________________________________________

 Submitted September 18, 2017 – Decided October 13, 2017

 Before Judges Messano and Vernoia.

 On appeal from the Superior Court of New
 Jersey, Law Division, Morris County,
 Indictment No. 15-04-0376.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Alyssa Aiello, Assistant Deputy
 Public Defender, of counsel and on the brief).

 Frederic M. Knapp, Morris County Prosecutor,
 attorney for respondent (Paula Jordao,
 Assistant Prosecutor, on the brief).

PER CURIAM

 Following the denial of his motion to suppress evidence and

statements made to law enforcement, defendant Richard J. Sabatino

pled guilty to third-degree possession of heroin, N.J.S.A. 2C:35-
10(a)(1). The judge sentenced defendant to a one-year term of

probation with certain conditions. Defendant argues on appeal:

 POINT I

 THE TRIAL COURT ERRED IN DENYING DEFENDANT'S
 MOTION TO SUPPRESS EVIDENCE FOUND IN HIS CAR
 DURING A ROUTINE TRAFFIC STOP.

 A. THE EVIDENCE SHOULD HAVE BEEN
 SUPPRESSED BECAUSE THE CONSENT TO
 SEARCH OBTAINED FROM THE DEFENDANTS
 WAS THE FRUIT OF THEIR ILLEGAL
 DETENTION.

 B. THE CONSENT TO SEARCH OBTAINED
 FROM THE DEFENDANTS WAS NOT VALID
 BECAUSE IT WAS DERIVED FROM AN
 ILLEGAL SEARCH OF THE DRIVER'S
 PERSON.

 C. SUPPRESSION OF THE EVIDENCE WAS
 ALSO REQUIRED BECAUSE THE CONSENT TO
 SEARCH OBTAINED FROM THE DEFENDANTS
 WAS NOT VALID.

Having considered these contentions in light of the record and

applicable legal standards, we reverse.1

 I.

 The judge issued a comprehensive written opinion summarizing

her factual findings following the evidentiary hearing on

1
 Following the hearing, the judge also granted the State's motion
to admit certain statements made by defendant and his co-defendant,
Judith Crane. Crane participated in the motion hearing with
separate counsel. Defendant does not appeal from that portion of
the order permitting the State to introduce his and Crane's
statements into evidence.

 2 A-4703-15T3
defendant's motion at which Roxbury Police Officer David Togno was

the sole witness. The judge found the officer to be credible. We

defer to the judge's factual findings, quoting from her opinion

as necessary. See State v. Gonzales, 227 N.J. 77, 101 (2016)

(citing State v. Elders, 192 N.J. 224, 243-44 (2007) ("We are

obliged to uphold the motion judge's factual findings so long as

sufficient credible evidence in the record supports those

findings.").

 Togno was patrolling Route 80 at approximately 2:00 p.m. when

he stopped a Toyota Corolla because of a faulty brake light and

failure to maintain travel in the center lane. Crane was driving

and defendant was in the front passenger seat. Crane proffered a

valid license; defendant obtained a valid registration and

insurance card from the glove compartment and tendered them to the

officer.2 When the officer asked Crane why the car was swerving,

she looked to defendant, who said they were tired. Crane appeared

nervous, her hand shook as she handed over her license and her

pupils were constricted. Togno asked her to exit the car, which

she did, and he questioned her further at the rear of the vehicle.

 Togno's initial suspicions that Crane might have been

impaired were dispelled after a short discussion. Crane said she

2
 The car was apparently registered to defendant's father.

 3 A-4703-15T3
was nervous because of prior interactions with police and prior

arrests for heroin. Togno asked if she was clean, and Crane

responded affirmatively. Togno continued the conversation, asking

if Crane "'snort[ed] it'" or "'sh[ot] it.'" Crane admitted she

used to inject heroin and Togno asked in a "conversational" tone

if Crane would show him where she injected herself with heroin.

Togno testified Crane was free to refuse, but she did not and

rolled up her sleeve. Togno observed fresh track marks.

 Togno believed Crane had lied about being "clean," and, given

her demeanor, concluded, "some sort of drug activity [was] going

on." He questioned Crane about where she was coming from and what

stores she and Sabatino had visited at the mall, before asking her

to return to the car. Although Crane was not formally under arrest

at this point, Togno said she was not free to leave.

 Defendant was still seated in the car, and Togno engaged him

in conversation, explaining he believed Crane had "used drugs

recently." Defendant expressed surprise, admitted being a former

heroin addict but claimed he was "clean" for several months. After

similarly asking whether defendant injected his heroin and if so

where, Togno asked if defendant would show him, and defendant

rolled up his sleeves.3 The officer then questioned defendant

3
 Togno apparently made no observations of note regarding
defendant's arms.

 4 A-4703-15T3
about where he had been and what stores he and Crane had visited.

Contrary to Crane, defendant told the officer they had visited

only one store.

 Togno reapproached Crane, confronted her with this

inconsistency and asked "what was going on." Crane admitted she

and defendant were coming from Paterson where they had purchased

heroin. After administering Miranda4 rights to Crane, Togno

questioned her further. She admitted defendant had purchased

drugs from his dealer and the drugs were still in the car. When

backup officers arrived, Togno read defendant his Miranda rights.

Ultimately, both Crane and defendant executed consent forms to

permit a search of the vehicle. Police found heroin, syringes and

Xanax pills in the rear upholstery.

 The judge reasoned that Togno's observations provided

reasonable suspicion that a motor vehicle offense had been

committed, thereby permitting him to stop the car. She rejected

defendant's argument that the investigatory stop "was so prolonged

as to exceed the bounds authorized by Terry."5 The judge also

concluded that "the scope of the stop . . . was reasonable, based

4
 Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d
694 (1966).
5
 Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20 L. Ed.
2d 889, 906 (1968)).

 5 A-4703-15T3
on the officer's personal observations and the initial responses

defendants gave to his questions after the stop."

 The judge rejected any claim that defendants were in custody

when questioned by Togno or that the officer intimidated or

threatened them. Critically, the judge concluded, "[N]either

party indicated an unwillingness to continue speaking with [Togno]

or an unwillingness to roll up their sleeves when asked if they

'would mind' showing him where they used to inject heroin."

 The judge recognized that the State needed to show Togno had

a reasonable suspicion of criminality afoot before requesting

defendants' consent. See State v. Carty, 170 N.J. 632, 635 (2002)

("[I]n order for a consent to search a motor vehicle and its

occupants to be valid, law enforcement personnel must have a

reasonable and articulable suspicion of criminal wrongdoing prior

to seeking consent to search a lawfully stopped motor vehicle.").

But, focusing on the voluntariness of each defendant's consent and

the lawfulness of the original stop, the judge rejected defendants'

argument that the reasonable suspicion supporting Togno's request

for consent was premised upon unlawful conduct, i.e., statements

made by defendants in violation of Miranda or Togno's observations

 6 A-4703-15T3
of track marks on Crane's arms.6 Finally, citing State v. Chapman,

332 N.J. Super. 452, 466 (App. Div. 2000), the judge noted she

would reach the same result even if "the initial detention was

unlawful," because "defendants' consent broke any chain of

causation that could give rise to a fruit of the poisonous tree

argument."

 II.

 We begin by noting that "[w]e owe no deference . . . to the

'trial court's interpretation of the law . . . and the consequences

that flow from established facts[,]' which we review de novo."

State v. L.S., 444 N.J. Super. 241, 248 (App. Div. 2016) (third

and fourth alterations in original) (quoting State v. Hubbard, 222

N.J. 249, 263 (2015)). That said, we agree with several of the

judge's initial legal conclusions.

 "To be lawful, an automobile stop 'must be based on reasonable

and articulable suspicion that an offense, including a minor

traffic offense, has been or is being committed.'" State v.

Bacome, 228 N.J. 94, 103 (2017) (quoting Carty, supra, 170 N.J.

at 639-40). Here, the initial stop of defendant's vehicle was

6
 The judge referenced observations of track marks on "defendants'
arms." However, as already noted, Togno never testified to seeing
fresh track marks on defendant's arms.

 7 A-4703-15T3
based on Togno's objectively reasonable suspicion that the motor

vehicle laws had been violated.

 Based on the lawfulness of the stop and nothing else, Togno

was permitted to order the vehicle's driver, Crane, out of the

car. State v. Smith, 134 N.J. 599, 611 (1994). Moreover, "[i]f

during the course of the stop or as a result of reasonable

inquiries initiated by the officer, the circumstances 'give rise

to suspicions unrelated to the traffic offense, an officer may

broaden [the] inquiry and satisfy those suspicions.'" State v.

Baum, 393 N.J. Super. 275, 287 (App. Div. 2007) (alteration in

original) (quoting State v. Dickey, 152 N.J. 468, 479-80 (1998)),

aff'd. as mod., 199 N.J. 407 (2009).

 "When the officer's stop is justified at its inception, the

question becomes whether the ensuing investigation is 'reasonably

related in scope to the circumstances which justified the

interference in the first place.'" Baum, supra, 393 N.J. Super.

at 286 (quoting Terry, supra, 392 U.S. at 20, 88 S. Ct. at

1879, 20 L. Ed. 2d at 905). "[P]olice may question the occupants

[of a car], even on a subject unrelated to the purpose of the

stop, without violating the Fourth Amendment, so long as such

questioning does not extend the duration of the stop." State v.

Hickman, 335 N.J. Super. 623, 636 (App. Div. 2000). However,

"[e]ven a stop that lasts no longer than necessary to complete the

 8 A-4703-15T3
investigation for which the stop was made may amount to an illegal

arrest if the stop is more than minimally intrusive." Dickey,

supra, 152 N.J. at 478 (internal quotations omitted).

 Here, unlike the defendants in Hickman and Chapman, Crane and

defendant furnished valid credentials. Furthermore, Togno

acknowledged that any suspicions about Crane's possible impairment

were fully dispelled after a brief conversation at the rear of the

car. Yet, Togno continued to question Crane about her nervousness,

and she admitted having prior dealings with police and her prior

use of heroin. This questioning alone may not have violated the

Fourth Amendment. See State v. Pegeese, 351 N.J. Super. 25, 31-

32 (App. Div. 2002) (citing Hickman and Chapman and holding that

brief questioning about recent whereabouts while awaiting computer

check of credentials did not violate the state or federal

constitutions). However, we focus on what happened next.

 We agree with defendant that Togno's request to have Crane

show her arms exceeded the proper scope of an investigative

detention. See State v. Privott, 203 N.J. 16, 31 (2010) (officer's

decision to lift suspect's shirt led to observations of drugs and

exceeded scope of investigative detention). That Togno made the

request in a conversational tone and did not issue a command, or

that Crane did not protest and rolled up her sleeves willingly,

are inconsequential facts. "To establish that defendant waived

 9 A-4703-15T3
h[er] Fourth Amendment rights, the State must show that defendant

had 'knowledge of the right to refuse consent.'" State v. Legette,

227 N.J. 460, 474-75 (2017) (quoting State v. Johnson, 68 N.J.

349, 353-54 (1975)). Clearly, there was no evidence in the record

and the judge did not find that Crane knew she could refuse to

show the officer her arms.

 The result of Togno's improper request and observations of

Crane's arms led to further detention and investigation,

questioning of Crane and then defendant and ultimately obtaining

their consent to search.7 In Carty, supra, 170 N.J. at 647, the

Court held for the first time "that consent searches following a

lawful stop of a motor vehicle should not be deemed valid . . .

unless there is reasonable and articulable suspicion to believe

that an errant motorist or passenger has engaged in, or is about

to engage in, criminal activity." Any reasonable suspicion formed

by Officer Togno was wholly inseparable from the unlawful request

that Crane show her arms without advising her that she could

refuse.

 The State has not argued, nor did it argue before the motion

judge, that the consent to search was sufficiently attenuated from

7
 Crane may have indeed been under arrest, because Togno testified
that she was no longer free to leave after he ordered her back to
the car.

 10 A-4703-15T3
the unlawful conduct. Relying on Chapman, supra, 332 N.J. Super.

at 466, however, the judge concluded the consent broke the chain

of events resulting from any possible illegality of the stop.

However, there is no attenuation issue presented when, in the

first instance, police improperly obtain the information that

supports the reasonable suspicion underlying a request for consent

to search. See, e.g., State v. Smith, 155 N.J. 83, 101 (1998) ("A

consent to search that is attributable to police misconduct

involving the violations of constitutional rights may be regarded

as the product of that unconstitutional conduct and an invalid

basis on which to justify a search.") (citing State v. Johnson,

120 N.J. 263, 288 (1990)).

 Reversed.

 11 A-4703-15T3